ILQ INVESTMENTS, INC.,
and Excalibur Group,
Inc., Plaintiffs,

v.

CITY OF ROCHESTER, Defendant.

Civ. No. 3–92–751.

United States District Court,
D. Minnesota,
Third Division.

Feb. 22, 1993.

---

Randall D.B. Tigue, Minneapolis, MN, for plaintiffs.

James J. Thompson, Holmes & Graven, Minneapolis, MN, and Terry Adkins, Rochester City Atty., for defendant.

KYLE, District Judge.

### Introduction

Plaintiffs brought this action against defendant alleging violations of their rights under the first, fourth, and fourteenth amendments of the United States Constitution and Article 1, Section 3 of the Constitution of the State of Minnesota.[1] They seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Jurisdiction is alleged under 28 U.S.C. §§ 1343(3), 2201, 2202 and 1367(a). Now before the Court is plaintiffs' Motion for a Preliminary Injunction.

### Background

#### A. The Parties

Plaintiff ILQ Investments, Inc. owns real property located at 220 SW 1st Avenue, Rochester, Minnesota.

---

1. Plaintiffs have not contended that the Constitution of the State of Minnesota supports an injunction. Accordingly, there is no discussion herein of the plaintiffs' claims under the State constitution.

Plaintiff Excalibur Group, Inc. operates a business entitled "Downtown Book and Video" located on the main floor of the building which occupies 220 SW 1st Avenue.[2]

Defendant City of Rochester ("Rochester") is a municipality organized under the constitution and laws of the State of Minnesota.

ILQ operates "Downtown Book and Video" as a book and video store.[3] About sixty percent (60%) of the floor space is devoted to the sale of books and magazines and the rental of videotapes of a general nature and is open to the public generally. About forty percent (40%) of the floor space is devoted to the sale of adult novelties and sexually explicit books and magazines as well as the rental of sexually explicit videotapes. The sexually explicit materials are physically segregated from the rest of the store and minors are not permitted into this area.[4]

### B. The Ordinance

In April 1988, the Common Council of the City of Rochester ("Common Council") adopted Ordinance No. 2590 entitled "An Ordinance Relating to Zoning; Defining and Restricting Adult Entertainments; Providing for Distancing Requirements, Definitions, and Restrictions of such Establishments From Residential Districts and other uses; . . ." Ordinance No. 2590 was adopted in response to a year long investigation by the Rochester Planning Department into issues pertaining to the presence of adult entertainment uses in Rochester. In March 1988, various committees and commissions studied the report issued by the Planning Department and conducted public hearings regarding the issue of adult entertainment uses. On April 13, 1988, the Planning Commission proposed certain amendments to Rochester's Zoning Code. On April 18, 1988, the Common Council adopted those amendments, which are contained in Ordinance 2590.

Several terms and provisions in Ordinance No. 2590 are relevant to the motion decided herein. First, the Ordinance defines "adult bookstore" as follows:

A business engaging in the barter, rental, or sale of items consisting of printed matter, pictures, slides, records, audiotapes, videotapes or motion picture, film, if such shop is not open to the public generally but only to one or more classes of the public, excluding any minor by reason of age, *or* if a substantial or significant portion of such items are distinguished or characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas."

Section 60.4012 (emphasis added). Section 60.4012 thus provides two separate definitions of "adult bookstore." The first definition is based solely upon whether a business excludes minors or other members of the public from the premises. The second definition is based solely upon the extent to which the business makes available certain products of a sexually explicit nature.

The Ordinance defines the term "adult establishment" as follows:

A business engaged in any of the following activities or which utilizes any of the following business procedures or practices; either:

a. any business which is conducted exclusively for the patronage of adults and as to which minors are specifically excluded from patronage thereat either by law or by the operators of such business, except any business licensed under Chapter 125A of the Rochester Code of Ordinances; or,

b. any other business which offers its patrons services or entertainment characterized by an emphasis on matters depicting, exposing, describing, discussing or relating to specified sexual activities or specified anatomical areas.

Specifically included in the term, but without limitation, are adult bookstores, . . . .

---

2. ILQ Investments, Inc. and Excalibur Group, Inc. will be known collectively as "ILQ."

3. Prior to the bookstore opening, a business known as China Hall, which was a purveyor of china, crystal, pottery, glassware and tabletop supplies, occupied the main floor of the property.

4. Plaintiffs physically segregate the sexually explicit materials and exclude minors from the area containing those materials in compliance with Minn.Stat. § 617.293. It is undisputed that the bookstore is in compliance with that statute.

*Id.* § 60.4015. Finally, the Ordinance restricts the location of adult establishments:

LOCATION. All adult establishment uses shall be located not less than 750 feet from any residential district boundary, from any church, from any school, or from any youth facility.

*Id.* § 65.270.

It is undisputed that ILQ's bookstore is located within 750 feet of the Rochester Public Library, which is defined as a "youth facility" in section 60.4795 of the Ordinance. It is also undisputed that the sexually explicit materials available in the bookstore regard "specified sexual activities" and "specified anatomical areas" as those terms are defined in sections 60.4642 and 60.4643 of the Ordinance.

### C. The Controversy

On August 7, 1992, the Zoning Administrator for Rochester sent ILQ a Notice of Violation of the Rochester Zoning Ordinance ("Violation I"). This notice informed ILQ that the use that had been established on the property violated the site location restrictions in Ordinance No. 2590. Specifically, the Zoning Administrator determined that the bookstore located on the property was an "adult establishment" as that term is defined in section 60.4015 of the Rochester City Ordinances. The Zoning Administrator based this determination on the definition of "adult establishment" set forth at section 60.4015(b) as well both definitions of "adult bookstore" in section 60.4012. The Zoning Administrator further determined that as the book store was an adult establishment located within 750 feet of the Rochester Public Library, the location violated the provisions of paragraph 63.252, subd. 9 of the Rochester Code of Ordinances.[5]

Also on August 7, 1992, the Zoning Administrator sent ILQ a second Notice of Violation ("Violation II"). This notice informed ILQ that it had changed the use of the property on which the bookstore is located without first obtaining a zoning certificate from Rochester, thereby violating section 61.-111 of the Rochester Zoning Ordinance. Specifically, the Zoning Administrator determined that the change from sales of china dishes, etc., to sales of *inter alia*, sexually explicit books and videos, changed the retail product mix and thus was a new use of the property, requiring a zoning certificate.

ILQ appealed both decisions of the Zoning Administrator to the Zoning Board of Appeals ("Zoning Board"). On September 2, 1992, the Zoning Board conducted a public hearing to hear the appeals of ILQ concerning both Violations I and II. Subsequently, the Zoning Board issued Findings of Fact and Conclusions of Law affirming in its entirety the Zoning Administrator's decision regarding Violation II, and affirming with modifications, the Zoning Administrator's decision regarding Violation I.

The Zoning Board determined that by a preponderance of the evidence presented

ILQ operated the business ... as an adult bookstore on the basis that a substantial or significant portion of the bookstore's items are distinguished or characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas," as the latter terms are defined by the Rochester Zoning Ordinances.

(Def's Exh. 12, Conclusions of Law ¶ 5.) The Zoning Board further determined that by a preponderance of the evidence presented

ILQ operated the business ... as a business which offered its patrons services or entertainment characterized by an emphasis on matter depicting, exposing, describing, discussing, or relating to "specified sexual activities", or "specified anatomical areas," as the latter terms are defined by the Rochester Zoning Ordinance.

*Id.* ¶ 6.

The Zoning Board thus concluded that the Zoning Administrator had properly determined that the bookstore was an "adult bookstore" under the second definition in section 60.4012, but that the Zoning Administrator

---

**5.** ¶ 63.252, subd. 9 of the Rochester Code of Ordinances is identical to § 65.720 of Ordinance No. 2590.

had erred in determining that the bookstore was an "adult bookstore" under the first definition in that section. The Zoning Board further concluded that the Zoning Administrator had properly determined that the bookstore was an adult establishment under section 60.4015(b).

ILQ appealed the Zoning Board's decision to the Common Council. On October 19, 1992, the Common Council conducted a public hearing on the appeal. On November 6, 1992, the Common Council issued Findings of Fact and Conclusions of Law as to both Violations I and II. The Common Council affirmed in its entirety the Zoning Administrator's decision to issue both Violations I and II. The Common Council modified, however, the Zoning Board's basis for affirming the Zoning Administrator's issuance of Violation I, reinstating the Zoning Administrator's original determination that the bookstore was an "adult bookstore" under both definitions in section 60.4012. (Def's Exh. 14, Conclusions of Law ¶¶ 6–7, Order ¶¶ 1–3.)

This action followed.

### Discussion

The test for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure requires consideration of four factors:

1. the threat of irreparable harm to the movant;

2. the state of the balance between this harm and the injury that granting the injunction will inflict on the other parties litigant;

3. the probability that the movant will succeed on the merits; and

4. the public interest.

*Dataphase Systems v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc). None of these factors alone is dispositive and a court must balance all four factors to determine "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are decided." *Hill v. Xy-*

*quad,* 939 F.2d 627, 630 (8th Cir.1991) (quoting *id.*)

#### A. Irreparable Injury

█ The threshold inquiry is whether the moving party has shown a threat of irreparable injury. ILQ argues that it faces irreparable harm because the existence of the ordinance forces it choose between exercising its First Amendment rights and facing criminal prosecution. ILQ contends that loss of first amendment freedoms constitutes irreparable harm as a matter of law. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). ILQ further contends that irreparable injury is established when an individual is forced to choose between foregoing first amendment freedoms and facing criminal penalties. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975).

Rochester responds that facing a loss of first amendment freedoms alone does not create a threat of irreparable injury. *See Rushia v. Town of Ashburnham,* 701 F.2d 7, 10 (1st Cir.1983). Rochester argues that there is no threat of criminal prosecution here and thus ILQ faces no imminent irreparable injury.

█ It is well established that loss of first amendment freedoms, for even minimal periods of time, constitutes irreparable injury, *Elrod,* 427 U.S. at 373, 96 S.Ct. at 2690, but loss of those freedoms alone may not be sufficient to warrant a preliminary injunction. *Doran,* 422 U.S. at 931–32, 95 S.Ct. at 2568; *Rushia,* 701 F.2d at 10. However, when the threat of such loss is combined with the real possibility that choosing to exercise first amendment freedoms will result in criminal penalties, a movant establishes a threat of irreparable injury warranting injunctive relief. *See Hohe v. Casey,* 868 F.2d 69, 73 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). Threatened criminal prosecution authorized by the ordinance is sufficient to constitute "irreparable injury" because it potentially will have a "chilling effect on free expression." [6] *Dom-*

---

**6.** Rochester contends that there is no imminent threat of criminal prosecution because ILQ's store has remained open during pendency of the administrative process and this action. The rec-

ord indicates, however, that Rochester's decision not to enforce the ordinance was the result of its decision to await the hearing on the preliminary injunction. In fact, the letter agreement between

browski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). On the record before the Court at this time, the irreparable injury factor favors granting an injunction.

### B.  Balance of Harms

■ Both ILQ and Rochester have important interests. On ILQ's side are first amendment freedoms. On Rochester's side are the interests in (1) attempting to preserve the quality of urban life by controlling land use and development, and (2) shielding minors from sexually explicit materials which are not considered obscene. Rochester argues that an injunction will significantly impair or limit its legislatively-created police powers.

Many of the harms which may befall Rochester if an injunction is granted are significant; however, none of them is as imminent as ILQ's loss of first amendment rights or risk of criminal prosecution. In addition, although Rochester contends that its decision not to enforce the ordinance reduces the risk of imminent harm to ILQ, its willingness to not enforce the ordinance also decreases the imminency of any potential harm to it if the injunction is granted. The balance of harms factors thus supports granting ILQ's motion for an injunction.

### C.  Likelihood of Success on the Merits [7]

■ ILQ contends that there is a likelihood that it will succeed on its claims that Ordinance No. 2590 is unconstitutional under both the first and fourteenth amendments to the United States Constitution. Specifically, ILQ alleges that (1) the Ordinance's definition of "adult bookstore" is unconstitutionally vague and thus violates ILQ's due process rights under the fourteenth amendment, and (2) the Ordinance impermissibly violates

ILQ's rights to free expression under the first and fourteenth amendments.

### 1.  Vagueness Objection

■■ It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). In the first amendment context, vague enactments operate to chill the exercise of freedoms of expression because uncertainty as to the meaning of an enactment may cause citizens to take a wider berth around the prohibitions in the enactment than they would if the enactment were precisely delimited. Id. at 109, 92 S.Ct. at 2299 (citations omitted). Accordingly, a "stricter standard" of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech. Hynes v. Mayor and Council of Borough of Oradell, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976).

ILQ contends that Ordinance No. 2590 is impermissibly vague as it regards the second definition of "adult bookstore" in section 60.-4012. Specifically, ILQ argues that the phrase "substantial or significant portion" which appears in that clause, fails to provide businesses with standards sufficient to determine whether a business is an "adult bookstore." ILQ further argues that the lack of standards makes it impossible for it to comply with the Ordinance.[8]

■ Rochester responds that ILQ may not question the vagueness of "substantial and significant portion" because it is clear that under any construction of that phrase, a substantial and significant portion of ILQ's business is in fact characterized by an emphasis

---

Rochester and ILQ is limited to a time period "until the hearing" on ILQ's motion for a preliminary injunction. The Court cannot conclude that Rochester will not enforce the Ordinance if ILQ's motion is denied.

**7.**  In determining whether this factor militates in favor of granting or denying a preliminary injunction, the court must take care to avoid "wooden" application of probability rules. In-

stead, the court should retain a focus on whether the balance of equities favors the movant to a sufficient degree. Calvin Klein Cosmetics Corp. v. Lenox Labs., 815 F.2d 500, 503 (8th Cir.1987).

**8.**  Under the Ordinance, an "adult bookstore" is an "adult establishment" and therefore is subject to the 750' location restriction. See Ordinance No. 2590, §§ 60.4015, 65.720.

on sexually explicit material.[9] Rochester argues that under principles of standing, a party may not allege that an enactment is unduly vague when that enactment clearly applies to it. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 55 n. 4, 106 S.Ct. 925, 933 n. 4, 89 L.Ed.2d 29 (1986); *Young v. American Mini–Theatres, Inc.,* 427 U.S. 50, 58–59, 96 S.Ct. 2440, 2446–47, 49 L.Ed.2d 310 (1976).

Initially, the Court finds that the statements in *Renton* and *Young* regarding standing principles are not applicable here. In both *Renton* and *Young,* the theaters' own allegations indicated that they fell within the scope of the allegedly vague language. *Renton,* 475 U.S. at 55 n. 4, 106 S.Ct. at 933 n. 4; *Young,* 427 U.S. at 60 n. 17, 96 S.Ct. at 2447 n. 17. In contrast, ILQ does not concede that its devotes a significant or substantial portion of its business to sexually explicit material. (Reply Mem.Supp.Mot.Prelim.Inj., at 10.) ILQ, therefore, does have standing to raise a vagueness claim.

■ Upon a review of the ordinance and Rochester's construction thereof, the Court concludes that ILQ has shown a likelihood of success on its claim that the phrase "substantial and significant portion" is unconstitutionally vague. By failing to define what it meant by "substantial and significant portion" the Common Council has precluded ILQ from determining how much sexually explicit stock can be retained without being defined as an adult bookstore. Such a classification system both prevents persons from determining how to comply with the Ordinance (e.g., how to avoid being deemed an adult bookstore under the second definition) and encourages arbitrary and discriminatory enforcement of the Ordinance.[10] *Alexander v. City of Minneapolis,* 713 F.Supp. 1296, 1303 (D.Minn.1989), *rev'd on other grounds,* 928 F.2d 278 (8th Cir.1991); *see Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

Moreover, the record indicates that Rochester officials were, and are, unable to determine the meaning of "substantial and significant" and how that definition applies to stores like ILQ. At the March 23, 1988, hearing before the Planning and Zoning Commission, Planning Commissioner Bob DeWitz asked the Planning Department's Ronald Livingston "what effect would the [location restriction] have on video stores." (Def's Exh. 5, at 6.). Livingston replied that the restriction "would have an effect on stores at which minors are not permitted." *Id.* Livingston did not even raise the second definition in section 60.4012.

Similarly, at the April 13, 1988, public hearing before the Common Council, a Rochester resident asked if an adult establishment "included the back room of a video store." (Def's Exh. 7, at 9.) Douglas Gregor replied that for a video store to be included "there has to be an 'emphasis' on the adult material." *Id.* Gregor did not, however, elaborate on the meaning of "emphasis." Gregor further stated that "it is difficult to create standards." *Id.* Finally, at the February 18, 1993, hearing on ILQ's Motion for Preliminary Injunction, Rochester conceded that although its position was that ILQ's bookstore offered a substantial and significant portion of sexually explicit materials, it could not provide the Court with a reasonably certain definition of "substantial and significant portion."

It is true that vagueness principles do not require mathematical precision. However, if Rochester officials cannot determine how to apply the "substantial and significant portion" standard, there is no reason to expect that ILQ or any other business owner could make those determinations.

### 2. First Amendment Objections

■ Even if the foregoing definition of "adult bookstore" is impermissibly vague, however, Rochester's application of Ordinance No. 2590 to ILQ could be upheld if

---

9. ILQ denies this assertion. (Reply Mem.Supp.Mot.Prelim.Inj., at 10.)

10. Because the statute may be vague as applied to ILQ, this case does not necessitate consideration of the principle that in some circumstances, a facial challenge to an ordinance may be raised by a party who cannot allege that the statute is vague as applied to him. *Young,* 427 U.S. at 60–61 & n. 17, 96 S.Ct. at 2447–48 & n. 17.

defining ILQ as an "adult establishment" under section 60.4015(b) passes constitutional muster. (*See* Def's Exh. 14, Conclusions of Law, at ¶ 7.) (quoting Ordinance 2590, § 60.-4015(b)). ILQ has not alleged that this definition is unconstitutionally vague.[11] ILQ argues, however, that applying the Ordinance to its bookstore violates its rights under the first amendment to the United States Constitution.

The crux of ILQ's first amendment objection is that Ordinance No. 2590 is unconstitutional (a) on its face and, (b) as applied to it because under § 60.4015(b) of the Ordinance, a store that sells or rents any sexually explicit material is an "adult establishment" and subject to the 750 foot location restriction; this classification makes Ordinance No. 2590 unconstitutionally overbroad and a restriction on protected expression which does not serve a substantial governmental interest.

Rochester responds that it has construed the definition of "adult establishment" in § 60.4015(b) to apply only to businesses which are characterized by an emphasis on sexually explicit material. Rochester contends that under this construction, Ordinance No. 2590 does not apply to businesses that sell only a small portion of sexually explicit material; rather, the Ordinance applies only to businesses that *emphasize* sexually explicit material. Rochester further contends that ILQ's bookstore does emphasize sexually explicit material and thus it is properly covered by the Ordinance.

There is nothing in the record, however, which indicates that Rochester has applied such a limiting construction to § 60.4015(b). Accordingly, for purposes of this motion, the Court will consider the definition as set forth in the Ordinance and assume that under § 60.4015(b), an adult establishment includes a business that provides any entertainment which is "characterized by an emphasis on matter depicting, exposing, describing, discussing or relating to" sexually explicit expression. Under this definition, Ordinance No. 2590 clearly applies to ILQ's bookstore.[12]

■■■■■ There is no dispute that in operating the bookstore, ILQ is engaging in "expression" protected by the first and fourteenth amendments to the United States Constitution. *See Bantam Books v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The threshold question in any first amendment case involving zoning ordinances is whether the restriction is content-based or content neutral. *Schneider v. City of Ramsey*, Civ. No. 4–90–320 (D.Minn. May 11, 1990). Regulations or ordinances are content-based if they are enacted for the purpose of restraining speech or expression; if so, they are presumptively invalid. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). Regulations or ordinances are content-neutral if justified without reference to the content of the regulated expression; as such, they are presumptively valid. *Id.* at 47, 106 S.Ct. at 929 (quoting *Virginia Pharm. Bd. v. Virginia Citizens Consumer*

**11.** At the hearing on ILQ's motion, Rochester stated that in affirming Violation I, the Common Council concluded that the first definition of "adult bookstore" in § 60.4012 applied to ILQ because it excludes minors from 40% of its bookstore. ILQ has not alleged that the first definition in § 60.4012 is unconstitutionally vague. Accordingly, this definition also subjects Ordinance No. 2590 to a first amendment challenge. The parties, however, have not focused their arguments on this issue.

**12.** The Court notes that there are two difficulties with Rochester's alleged construction. First, the offered construction clashes with other portions of the Ordinance. The second definition of "adult bookstore" in § 60.4012 contains the phrase "if a substantial or significant portion of such items are characterized by an emphasis on the depiction or description of" sexually explicit

material. If, as Rochester contends, "characterized by an emphasis on" concerns the extent to which the *business* purveyed sexually explicit material, and not the material itself, "substantial and significant portion of such items" would be superfluous. As both parties have argued, that phrase is not superfluous.

Second, if § 60.4015(b) had been construed to apply only to businesses characterized by an emphasis on sexually explicit material, or more accurately, businesses that emphasize sexually explicit materials, that definition would not be any less vague than the definition of adult bookstore contained in the second clause of § 60.-4012. The Supreme Court in *Young*, specifically declined to pass on whether "characterized by an emphasis" was unconstitutionally vague. 427 U.S. at 58, 96 S.Ct. at 2446.

*Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)).

■ The Supreme Court in *Renton,* determined that an ordinance which does not ban adult establishments altogether, but rather restricts the location of such establishments, is properly characterized as a "time, place, and manner" restriction. 475 U.S. at 46, 106 S.Ct. at 928. Time, place and manner restrictions are viewed as "content-neutral" and are constitutional so long as they are designed to serve a "substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. at 928.

■ In passing on the constitutionality of a zoning restriction on adult entertainment, the municipality's purpose in enacting an ordinance is the dispositive consideration.[13] The *Renton* Court held that an ordinance restricting the location of movie theatres showing adult-only films was within the limits of the First Amendment because the city's *predominant* concern was with the "secondary effects" of adult theatres and not with the content of the films themselves. *Id.* at 47, 106 S.Ct. at 929. The Court in *Renton* reasoned that where secondary effects are the chief consideration for enacting an ordinance, a city need not conduct its own studies or generate its own evidence of adverse secondary effects; rather, it may rely on the studies and experiences of other cities, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses." *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931. In addition, the ordinance enacted was permissible in that it was " 'narrowly tailored' to affect only that category of [establishments] shown to produce the unwanted secondary effects." *Id.* at 52, 106 S.Ct. at 931.

*Renton* and its progeny thus require a city's decision to regulate sexually explicit expression through zoning to be grounded in fact. This requirement is imposed in two ways. First, where as here, a city does not conduct its own studies prior to enacting an ordinance, the studies or other factual evidence creating the factual basis for the ordinance and hence the substantial governmental interest, must be "reasonably believed to · be relevant to the problem that the city addresses." *Renton* at 51–52, 106 S.Ct. at 931. Second, even if the governmental interest is substantial, the regulation must be "narrowly tailored to affect only that category of [business] shown by the factual evidence to produce the unwanted secondary effects." *Id.; see Wolff v. City of Monticello,* 803 F.Supp. 1568, 1572 (D.Minn.1992).

At its essence, ILQ's first amendment argument against Ordinance No. 2590 is that Rochester lacked the secondary effects evidence necessary for the Ordinance to serve a substantial governmental interest.[14] ILQ contends that although *Renton* allows cities to rely on the studies and experiences of other cities in enacting zoning ordinances pertaining to adult establishments, the secondary effects studies on which Rochester relied were so dissimilar to the business at issue that they could not reasonably be believed to be relevant.

Rochester responds that under *Renton,* it was proper to rely on other cities' studies and experiences. Rochester contends that the studies it relied upon in enacting Ordinance No. 2590 were reasonably believed to be relevant to businesses similar to ILQ's bookstore.

It is undisputed that Rochester did not conduct an independent study of the effects

---

**13.** In determining whether the Common Council of Rochester acted with a permissible purpose, the appropriate focus is not "an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2456, 2469, 115 L.Ed.2d 504 (Souter, J., concurring) (1991).

**14.** Although it does not express this contention, ILQ could also be said to argue that because the Ordinance applies to its bookstore and similar businesses, it is not narrowly tailored to affect only the category of business shown in the studies to produce unwanted secondary effects. Because the Court concludes that the substantial governmental interest factor is dispositive, it need not and does not decide whether it is likely that ILQ would succeed on its claim that Ordinance No. 2590 is not narrowly tailored to meet the state interest.

of adult establishments of any type, much less a study of secondary effects produced by book and video stores that offer both sexually explicit and non-sexually explicit materials and allow only off-premises consumption of those materials. Accordingly, Ordinance No. 2590 serves a substantial governmental interest only if the Common Council had a reasonable basis for believing that the studies actually relied upon were relevant to uses such as the bookstore operated by ILQ.[15]

The evidence submitted by Rochester indicates that in enacting the ordinance, the Common Council relied on five studies; (1) a 1983 study by the Indianapolis, Indiana Division of Planning ("Indianapolis Study"); (2) a 1978 study by the City of St. Paul, Minnesota ("St. Paul I Study"); (3) a 1987 Supplement to the St. Paul I Study ("St. Paul II Study"); (4) a 1979 study by the City of Phoenix, Arizona ("Phoenix Study"); and (5) a report by the American Society of Planning Officials ("ASPO Report").[16] (Def's Exh. 2, at 5–8.)

A review of the factual bases, definitions, and operational methodologies of those studies supports a conclusion that ILQ has shown a substantial likelihood of succeeding on its claims that the evidence Rochester relied upon in enacting Ordinance No. 2590 was not

reasonably related to the type of adult entertainment at issue here. Of the studies that define what is meant by "adult entertainment" or "adult business," none of the definitions supports a conclusion that the studies considered the secondary effects produced by businesses that sell sexually explicit material as a portion of a retail mix that involves non-sexually explicit materials.[17]

For example, the Indianapolis Study examined the secondary effects of "adult entertainment businesses" defining that term as businesses "which primarily feature sexually stimulating material and or performances." The St. Paul I Study did not state a pertinent definition, but it did state that it was examining "[b]ars, X-rated theatres, bookstores specializing in pornography, massage parlors and other adult entertainment businesses." The St. Paul II Study stated that it was retaining the "sex-related focus" of the definition in place as of 1987.[18] None of these studies provides a basis for determining that the Common Council could reasonably have believed that the conclusions reached therein were relevant to the problems which may or may not be caused by businesses of a type similar to ILQ's bookstore.[19] Moreover, although each of the

---

15. Rochester contends that the applicable standard for judging a city's enactment of a zoning restriction is whether the city acted "arbitrarily and capriciously." *Wall Distrib., Inc. v. City of Newport News*, 782 F.2d 1165, 1169 (4th Cir. 1986). The Fourth Circuit's decision in *Wall*, however, predated *Renton* and was decided under the four-part test first established in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1697, 20 L.Ed.2d 672 (1968). In *Renton*, the Supreme Court established a new test for reviewing zoning restrictions on protected expression. In doing so, the Court looked only to the holding in *Young*, and not to the means by which the plurality and Justice Powell reached their decision in *Young*. *Cf.* 427 U.S. at 79–82, 96 S.Ct. at 2457–58 (Powell, J., concurring) (applying *O'Brien* test). Nevertheless, the court in *Wall* paralleled the *Renton* Court's subsequent conclusion that in enacting a zoning restriction on adult entertainment, a city must have a "reasonable basis" for determining that the enactment would alleviate undesirable secondary effects. 782 F.2d at 1169. Accordingly, *Renton* and *O'Brien* are parallel in that where relevant secondary effects evidence is lacking, a zoning regulation fails to serve a substantial governmental interest and the city's enactment of that restriction may be said to be arbitrary and capricious.

16. The ASPO Report contained discussions of ordinances in Detroit, Michigan, Boston, Massachusetts, Norwalk, California, New Orleans, Louisiana, Fairfax County, Virginia and Santa Maria, California. The Report did not independently examine secondary effects produced by adult entertainment.

17. The Phoenix Study, which examined the effects of "adult businesses," does not define what that term means or how it affected the determination of the control and study areas.

18. At oral argument, Rochester contended that the St. Paul II Study defined "adult use" and "adult bookstore" in an identical manner to Rochester's definition of "adult bookstore" and "adult establishment." The pages cited by Rochester, however, indicate that the cited definitions were merely proposed amendments to the definitions. Moreover, those definitions do not indicate what type of businesses were the focus of the St. Paul II Study.

19. Rochester contends that under *Renton*, a city is not required to conduct or locate a study examining a specific type of adult entertainment, nor is a city required to conduct a study every

studies concluded that there were secondary effects produced by "adult" businesses, none of those studies discussed, much less concluded, that any business selling any amount of sexually explicit material produced secondary effects similar to those produced by businesses engaging exclusively or primarily in selling or making available sexually explicit material.[20] Neither do those studies support a reasonable inference that because a bookstore purveying only sexually explicit material and allowing on-premises consumption produces unwanted secondary effects, a bookstore featuring both sexually explicit and non-sexually explicit materials and requiring off-premises consumption produces the same effects.[21] *See World Wide Video v. City of Tukwila*, 117 Wash.2d 382, 816 P.2d 18, 21 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1672, 118 L.Ed.2d 391 (1992); *cf. Thames Enterp., Inc. v. City of St. Louis*, 851 F.2d 199 (8th Cir.1988) (council member's testimony about secondary effects held sufficient to meet *Renton* test), *reh'g denied*.

In summary, although the Court recognizes that this motion is brought at a preliminary stage of the litigation, the evidence now before the Court justifies a conclusion that ILQ has shown a likelihood of success on the merits of its claim that Ordinance No. 2590

does not serve a substantial governmental interest and that it thus is an impermissible time, place, and manner restriction. In its current form, Ordinance No. 2590 includes within its restrictions businesses that sell, rent or otherwise provide any amount of sexually explicit material. Whatever the moral beliefs about businesses who supply such material, ILQ has shown a likelihood that Ordinance No. 2590 does not have an adequate factual basis to reach that far.

At a later stage of the litigation, Rochester may produce evidence sufficient to rebut ILQ's claim and the current record. Currently, however, the equities favor maintaining the status quo until the merits of this case are decided.

## D. Public Interest

Cases such as this present strong conflicting public interests: Rochester's interest in protecting the public welfare of its citizens through zoning powers and ILQ's interest in exercising its first amendment rights. Upholding constitutionally guaranteed rights is in the public interest. *Playboy Enterp., Inc. v. Meese*, 639 F.Supp. 581, 587 (D.D.C.1986). Accordingly, the public inter-

time it is faced with a new type of adult entertainment. Whatever *Renton* says about a city's ability to rely on existing studies and experiences, *Renton* clearly establishes that a city may not choose to rely on external indicators of secondary effects without regard to relevance. In some circumstances then, the creation of a new form of adult entertainment likely will necessitate independent study. In any event, Rochester has not shown that the studies it *actually* relied upon meet the *Renton* standard of relevance.

**20.** Rochester makes much of the fact that it conducted its own study of secondary effects and that the study included the secondary effects produced by businesses of the type involved in this action. Rochester, however, did not conduct a "study" of the secondary effects of sexually explicit material. It prepared a "report" that reviewed other cities' studies of secondary effects and discussed a professional association's report on regulating sex businesses. Because Rochester specifically relied on studies and reports prepared by other entities, the *factual* bases for its enactment of Ordinance No. 2590 depend exclusively on those studies.

**21.** The Washington Supreme Court's decision in *Tukwila* dealt with an adult entertainment estab-

lishment that "[i]n addition to selling and renting sexually explicit magazines, novelties, and videotapes, [had] eight panoram, or peep show, booths on the premises." 816 P.2d at 19. In a decision decided under the United States Constitution, not the Constitution of the State of Washington, the Supreme Court of Washington determined that the city had not shown that its adult entertainment use ordinance served a substantial governmental interest because the studies relied upon by the city did not show that adult businesses with predominantly "take home" merchandise have the same harmful secondary effects traditionally associated with adult movie theaters and peep shows. *Id.*

*Tukwila* is pertinent to this case because the establishment in that case, like ILQ, sold merchandise only on a take out basis, but unlike ILQ, the establishment sold only sexually explicit merchandise. Thus, the Supreme Court of Washington's conclusion that a substantial government interest was not shown in that case supports this Court's conclusion that ILQ has shown a likelihood of success on its claim that Ordinance No. 2590 does not serve a substantial government interest.

est factor supports issuance of a preliminary injunction.

## ORDER

Based upon the records, files, and proceedings herein, and the briefs and arguments of counsel, IT IS ORDERED that:

1. Plaintiffs ILQ Investments, Inc. and Excalibur Group, Inc.'s Motion for a Preliminary Injunction (Doc. No. 2) is GRANTED. Until further order of this Court, defendant City of Rochester is hereby enjoined from taking any action, civil or criminal, to enforce the provisions of Ordinance No. 2950 against plaintiffs, their agents, officers, employees or persons acting under their direction and control; and

2. This order shall be effective upon plaintiffs filing a bond in the amount of $1,000.00.

The foregoing Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law in accordance with the requirements of Fed.R.Civ.P. 52(a).