Gregg **PERKINS**, d/b/a St. Paul Firearms Co., a Minnesota Corporation and Individually, Plaintiff,

v.

**CITY OF ST. PAUL**, a Municipal Corporation; St. Paul Department of Licensing, Inspections and Environmental Protection; and Robert Kessler, Robert Megard, Mike Harris, Dan Bostrom, and Jerry Blakey, individuals, Defendants.

No. CIV. 97–1425 DSD/JMM.

United States District Court,
D. Minnesota.

Nov. 5, 1997.

Joseph A. Rymanowski, Jr., Rymanowski Law Office, St. Paul, MN, for plaintiff.

Matthew J. Pfohl, St. Paul City Attorney, St. Paul, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for preliminary injunction. Based on a review of the file, record and proceedings herein, the court denies plaintiff's motion.

## BACKGROUND [1]

Plaintiff Gregg Perkins is a resident of St. Paul and is the owner and operator of the St. Paul Firearms Company, a Minnesota corporation doing business at 634 Snelling Avenue in St. Paul. Defendant City of St. Paul (hereafter "City") is a municipal corporation. Defendant Department of Licensing, Inspections and Environmental Protection is a subdivision of the City of St. Paul, and acts as the licensing and inspection branch of the City. Defendants Roberta Megard, Jerry Blakey, Dan Bostrom, and Mike Harris are members of the St. Paul City Council. Defendant Robert Kessler is. Director of the aforementioned Department of Licensing, Inspections and Environmental Protection.

In 1956, the City enacted an ordinance requiring operators of retail firearms businesses located within the City to be licensed by the City. The State of Minnesota subsequently enacted Minn.Stat. § 471.633, which preempted local regulation of retail gun sales. In May 1993, however, Minn.Stat. § 471.635 became effective, which permitted municipalities to regulate the location of gun shops via local zoning ordinances, and thus created an exception to state preemption of local regulation of gun shops. On June 28, 1993, the City of St. Paul placed a moratorium on the issuance of all retail gun shop licenses while considering whether to amend its zoning code. This moratorium was replaced on March 15, 1995 with a permanent zoning ordinance prohibiting gun shops with-

---

**1.** The court's review of the relevant facts has been made difficult because the pleadings and briefs of the parties often contain conflicting dates.

in 1,000 feet of certain protected uses. It is within this context of statutory change that this controversy arose.

In February 1993, plaintiff, doing business as the St. Paul Firearms Company, prepared to open as a firearms dealer at the aforementioned location. Plaintiff obtained a federal firearms dealer's license and submitted an application for a Class III St. Paul license to sell firearms. This application was recommended for approval by the Office of License, Inspection and Environmental Protection, but in July 1993, an administrative law judge recommended against plaintiff receiving such a license. Despite the moratorium on the issuance of retail gun shop licenses, in October of that year the St. Paul City Council granted such license to plaintiff.

In December 1993, plaintiff and the City were sued by a group calling themselves the Hamline–Midway Stability Coalition (hereafter "Coalition"), which claimed that plaintiff's license was issued in violation of the City's gun shop license moratorium. Ramsey County District Court Judge James Clark found that the City of St. Paul could not override its moratorium, issued summary judgment for the Coalition, and held plaintiff's licensure unlawful. The City therefore revoked plaintiff's license.[2]

Plaintiff appealed Judge Clark's decision, but while the matter was pending before the Minnesota Court of Appeals the license expired on October 14, 1994. In April 1995, the Minnesota Court of Appeals overruled Judge Clark's summary judgment order, finding that the state district court lacked jurisdiction to revoke plaintiff's license. When plaintiff sought a new license in April 1995, the City treated his application as a renewal rather than as a new application and issued another license without holding a public hearing on the matter. In October 1995, the Coalition again sued the plaintiff and City, arguing that the license was a new license, not a renewal, and the City had therefore violated rules requiring public hearings

whenever any action is taken on a Class III license. In addition, the coalition contended that the license was issued in violation of the City's recently enacted zoning ordinance prohibiting gun shops near protected areas.

In April 1996, the Minnesota Court of Appeals held that plaintiff's application should not have been treated as a renewal and had been improperly issued in violation of the newly-enacted zoning ordinance. In overruling the decision of the St. Paul City Council to grant plaintiff a license, the court ordered that a public hearing be held on any further license applications.

Plaintiff filed his third application for the required license on May 2, 1996. An administrative law judge recommended approval of the application. The City Council, however, denied the license application, and on April 7, 1997, plaintiff received notice of this decision and was ordered to cease and desist the sale of firearms and ammunition.

Plaintiff thereafter filed this action on June 16, 1997, seeking declaratory relief that, among other things, the City's licensing statute is unenforceable against him pursuant to Minn.Stat. § 471.633, and alleging violations of his: (1) substantive and procedural due process rights; (2) equal protection rights; and (3) right to free speech. On September 18, 1997, he moved for the preliminary injunction that is the subject of this proceeding. Plaintiff asks this court to restrain defendants from enforcing the April 7, 1997, cease and desist order, "thereby maintaining the status quo in existence prior to that Order" and allowing him to continue selling firearms until the merits of the case can be decided.

## DISCUSSION

The court considers four factors in determining whether to grant a plaintiff's motion for preliminary injunction:

1. Is there a substantial threat that the movant will suffer irreparable harm if relief is not granted;

---

**2.** There is some dispute as to when this revocation occurred. According to plaintiff, the City revoked his license in October of 1994. The defendant, however, contends that the revocation occurred on August 24, 1994, when the City

Council passed a resolution revoking plaintiff's retail firearm license. Plaintiff may confuse the expiration of his license in October with its revocation two months earlier.

2. Does the irreparable harm to movant outweigh any potential harm that granting a preliminary injunction may cause the non-moving parties;

3. Is there a substantial probability that the movant will prevail on the merits; and

4. The public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court balances the four factors to determine whether a preliminary injunction is warranted. *Id.* at 113; *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). The plaintiff bears the burden of proof concerning the four factors. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987).

### 1. The Threat of Irreparable Harm

■ Plaintiff must first establish that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages. Possible or speculative harm is not enough. The absence of such a showing alone is sufficient to deny a preliminary injunction. *Gelco,* 811 F.2d at 420; *Roberts v. Van Buren Public Schools,* 731 F.2d 523, 526 (8th Cir.1984).

■ Plaintiff proffers many reasons why he and his business will suffer irreparable harm if the court does not grant a preliminary injunction. He contends that (1) because the City is ordering him to close he will lose the business income and profits derived from the sale of weapons; (2) the only place he can sell firearms is at 634 Snelling Avenue and the City is therefore denying him the use and enjoyment of his federal firearms license; (3) he will be left with inventory he cannot sell; and (4) he cannot sustain this suit without his business, as he has no other source of income. *See* Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (Docket No. 9) at 9–10. None of these reasons, however, is convincing.

Plaintiff's first argument is that because the City is ordering him to close he will lose the business income and profits he would have derived and could continue to derive from the sale of firearms. This argument belies the fact that plaintiff does not currently have a license to sell firearms. While lost profits may be a basis for finding irreparable harm if difficult to estimate, here the court need not address this argument because plaintiff's business is not "up and running"; instead, plaintiff is waiting for a license to enable him to commence business. Without a license, plaintiff cannot claim lost profits. Even if the court were to consider the lost profits argument, plaintiff has failed to show how money damages awarded after a trial would be inadequate to compensate him for any losses. In this case, such money damages are not too speculative where plaintiff's past records can be analyzed in making an accurate estimate.

While plaintiff cites *Illinois Sporting Goods Ass'n v. County of Cook,* 845 F.Supp. 582 (N.D.Ill.1994) for the proposition that injunctive relief is appropriate in this case, the court finds that case inapposite. In that case, the businesses involved were already licensed and operating when the motion for injunctive relief was sought. Here, however, as already discussed, plaintiff does not have a valid license, so it cannot be said that there is an imminent risk of loss of customers or goodwill.

Similarly, none of the three remaining arguments of the plaintiff are sufficient to show irreparable harm. As plaintiff's counsel admitted at oral argument, a federal firearms license can be used at a number of locations if certain procedural steps are taken. Even if such license was valid at only one location, the court has serious doubts about whether the inability to use a federal firearms license while awaiting a resolution on the merits constitutes irreparable harm. As for plaintiff's argument that he has unsold inventory, the court finds this fact irrelevant. This case is about the denial of a license, not the revocation of an otherwise valid license. Because plaintiff has no license, he could not expect to sell any inventory subject to that license. Finally, with regard to plaintiff's financial position and ability to sustain this suit, no evidence has been presented to the court beyond plaintiff's bare allegations that plaintiff will be unable to pursue this suit in the absence of injunctive relief.

The strongest argument plaintiff proffers to show irreparable harm is that the City's consideration of signs placed in his window in denying him a new license constitutes an impermissible restraint on his commercial speech rights under the First Amendment. The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). Loss of those freedoms, however, may not alone be sufficient to warrant a preliminary injunction. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975).

Plaintiff relies on *ILQ Investments, Inc. v. City of Rochester,* 816 F.Supp. 516 (D.Minn. 1993), for the proposition that a preliminary injunction is proper in this case. However, not only did the Eighth Circuit reverse the district court in that case,[3] finding a preliminary injunction inappropriate, the facts of that case are clearly distinguishable. In *ILQ Investments,* the court found irreparable injury when the plaintiff faced the choice of foregoing exercise of its First Amendment rights and facing criminal penalties. *Id.* at 521. Unlike that case, plaintiff here is not facing any criminal penalties if he chooses to continue exercising his First Amendment rights by placing certain signs or posters in the windows of his business. While the City may have impermissibly considered such speech in denying him a license, there is no evidence that plaintiff's First Amendment rights are currently being violated. As defendant points out, the City has not denied plaintiff the right to maintain a non-firearms retail business at 634 North Snelling, and this fact is given validity by the City's recent grant of a second-hand dealer license to plaintiff for that address. He is free to display anything in his window that he wishes.

Although a failure to show irreparable injury in the absence of a preliminary injunction dooms plaintiff's case, the court will briefly consider the other relevant factors.

## 2. The Balance of Harm Between the Parties

The second *Dataphase* requirement is that the harm to plaintiff in the absence of a preliminary injunction outweighs the potential harm that granting a preliminary injunction may cause to defendants. *Dataphase,* 640 F.2d at 114. The essential inquiry in weighing the equities is whether the balance tips decidedly toward the movant. *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 624 (8th Cir.1987).

The court is keenly aware that if the requested injunctive relief is granted the court will be taking away from City authorities control over who they may license to conduct business. Because of this concern, any decision by this court to overrule the City on uniquely local matters should await a trial on the merits. This is especially true when plaintiff has failed to show irreparable harm if injunctive relief is not granted.

## 3. The Likelihood of Success on the Merits

Under the third *Dataphase* requirement, plaintiff must establish a substantial probability of success on the merits. Here, plaintiff has alleged that the City has violated his free speech and due process rights and denied him equal protection of the law.

### a. Free Speech

Plaintiff argues the City has violated his free speech rights because one of the City's bases for denying plaintiff's license application was that plaintiff placed certain signs in his window which detrimentally affected his neighbors. He contends that consideration of his speech in denying his application violated the First Amendment. Defendant counters that the only deprivation plaintiff suffered was the denial of his right to sell firearms at 634 North Snelling, a right not guaranteed by the First Amendment. In addition, according to defendant, plaintiff' free speech rights have not been abridged because the City's licensing standards include a provision allowing the City Council to

---

**3.** *See ILQ Investments, Inc., v, City of Rochester,* 25 F.3d 1413 (8th Cir.1994), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994).

consider whether "[t]he licensed business, or the way in which such business is operated, maintains or permits conditions that unreasonably annoy, injure or endanger the safety, health, morals, comfort or repose of any considerable number of members of the public." St. Paul Ordinance § 310.06(b)(7)-(b)(8).

■ In the area of free expression, a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *See Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 151, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). While objective standards provide guideposts for courts in determining whether a licensor is discriminating against disfavored speech, the absence of such standards makes the court's task in determining whether the licensor is permitting favorable, and suppressing unfavorable, expression difficult. *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 758, 108 S.Ct. 2138, 2144–45, 100 L.Ed.2d 771 (1988).

In this case, the ordinance in question provides a great deal of discretion in the St. Paul City Council, which in turn considered the content of plaintiff's speech in denying him a firearms dealer's license. The Constitution requires that the City establish neutral criteria to ensure that the licensing decision is not based on the content or viewpoint of the speech being considered. *City of Lakewood,* 486 U.S. at 760, 108 S.Ct. at 2145–46. In this case, it is arguable that the St. Paul City Council in applying § 310.06 violated this proscription.

■ Plaintiff, seems to argue that because the St. Paul City Council violated his First Amendment rights in considering the content of his speech, he is automatically entitled to the license in question. However, the St. Paul City Council may take many things into account when making licensure decisions beyond plaintiff's speech. When speech and nonspeech elements are combined in the same course of conduct, a sufficiently important government interest in regulating the nonspeech element can justify incidental limitations of First Amendment freedoms. *See U.S. v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In addition, non-First Amendment conduct will not be elevated to the level of First Amendment expression solely because it occurs at the location or simultaneous with protected expression. *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 703, 106 S.Ct. 3172, 3175, 92 L.Ed.2d 568 (1986); *O'Connor v. City and County of Denver,* 894 F.2d 1210, 1218 (10th Cir.1990). This case is different from those involving adult bookstores or theaters, where the product being sold is protected by the First Amendment. Here, the product, firearms, does not receive such protection.

While consideration of the content of plaintiff's speech in deciding whether to grant him a license may be prohibited, such a showing does not mean plaintiff is automatically entitled to the relief he requests. Administrative law judge George Beck made 19 findings of fact and 25 conclusions of law in recommending that the St. Paul City Council approve plaintiff's application for a firearms dealer's license. *See* Affidavit of Joseph Rymanowski (Docket No. 12) Exhibit 1. The St. Paul City Council added a twentieth finding of fact and amended eight of the ALJ's conclusions. Of the amended conclusions, only conclusions 14 and 19 deal directly with plaintiff's speech. Conclusion 14 reads:

The Applicant has not demonstrated that he is a fit licensee, in that he has operated his business in a manner intentionally calculated to irritate and annoy the neighborhood. Despite his awareness that neighbors are concerned with the presence of a store selling firearms so near to a playground, he had deliberately displayed realistic replicas of firearms, weapons, and ammunition. He has deliberately engaged in a pattern of mocking the fears of the neighborhood and willingly displayed the Killerbkild sign in his window, which was designed to heighten fears that other such businesses were soon to open nearby. The Council has a right to expect that persons licensed to sell firearms are not persons who deliberately pick fights with neighbors, and seek to inflame and aggravate community tensions for mean-spirited reasons.

Resolution of City of Saint Paul, Minnesota, Exhibit 3 to Affidavit of Joseph Rymanowski (Docket No. 12). Conclusion 19 provides:

> The record does not show that the Applicant had any significant involvement in the "KILLERBKILD" venture, but his display of the flyer in the store window was done with the knowledge that it would disturb and upset the neighborhood.

*Id.* In addition, only conclusion 16 can be construed as indirectly considering plaintiff's speech.[4] The other findings and conclusions of the ALJ and St. Paul City Council deal with other issues, such as whether defendant's business falls within the definition of a gun shop and the fitness of plaintiff as a potential firearms dealer licensee. The St. Paul City Council is certainly entitled to consider these other bases in deciding to deny plaintiff the license, and even if plaintiff's free speech rights were violated there is no guarantee that upon reconsideration the decision of the St. Paul City Council would be any different.

### C. Procedural and Substantive Due Process

Plaintiff alleges that the City violated his due process rights "by the City's revocation without hearing, failure to reinstate his [license] pursuant to the Minnesota Court of Appeals without opportunity to be heard, and by the City's decision to consider his original license suspended without a hearing." Mem. in Supp. of Pl.'s Mot. for Preliminary Injunction (Docket No. 9) at 27. The crux of the court's inquiry, however, is whether the City afforded plaintiff due process in denying his May 2, 1996, application.

▮ To make a colorable procedural or substantive due process claim, plaintiff must show that he had a protected property interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *Bishop v. Tice,* 622 F.2d 349, 353 (8th Cir.1980) (holding that as to either substantive or procedural due process claims, plaintiff must allege implication of a property or liberty interest). Without a property interest, plaintiff's procedural and substantive due process claims fail. *Ellis v. City of Yankton. S.D.,* 69 F.3d 915, 917 (8th Cir.1995) ("In analyzing a claim that the deprivation of property violates either procedural or substantive due process rights, a court must first consider whether claimant has a protected property interest to which the Fourteenth Amendment's due process protection applies.") (citing *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445–46 (8th Cir.1995)). Property interests must arise from an independent source such as state law. *Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2708–09 ("Property interests ... are not created by the Constitution. Rather, they are created ... by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995). There is no independent state source providing a legitimate expectation of entitlement to an unissued license or renewal of an existing license. *Movers Warehouse,* 71 F.3d at 720 (holding that no property interest exists in the renewal of bingo hall license based on the finding that "since the turn of the century the Minnesota Supreme Court has consistently held that the issuance of a state license generally does not create a protected property interest in the renewal of the license."); *Minneapolis Auto Parts Co., Inc. v. City of Minneapolis,* 572 F.Supp. 389, 395 (D.Minn. 1983) ("Prior to its being issued, the applicant has no legitimate expectation of entitlement to a license or permit."); *Country Liquors, Inc. v. City of Council of City of Minneapolis,* 264 N.W.2d 821, 826 (Minn. 1978) (holding that there is no property interest in an unissued liquor license)

---

4. Conclusion of law 16 reads "Under § 310.06(b)(8), a licensed business or the way in which it is operated may not permit conditions that unreasonably annoy, injure, or endanger the safety, health, morals, comfort or repose of any considerable number of members of the public."

In this case, whether plaintiff's license application is treated as a new license or renewal of a preexisting license,[5] no property interest exists which requires the City to provide due process. Minnesota law simply does not provide a protected property interest in a firearms license. Plaintiff is therefore unlikely to succeed on his procedural or substantive due process claim.

#### d. Preemption/Equal Protection

Plaintiff spends considerable time in his brief arguing that the City had no licensing power over plaintiff's firearms business because such power is expressly preempted by Minn.Stat. § 471.633, which preempts local regulation of retail gun sales.

Federal adjudication or comment upon this issue is inappropriate at this time. Federal court abstention is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In this case, plaintiff admits "[p]reemption has not been ruled upon by any court in Minnesota, either concerned with this case or any other, and therefore, the plaintiff requests interpretation of the preemption statute by this court." Mem. in Supp. of Pl.'s Mot. for Preliminary Injunction at 21. Because the court does not know how the Minnesota courts would interpret the interplay of the relevant state and municipal statutes, comment on this issue at this time is premature.

#### 4. The Public Interest

The final *Dataphase* factor requires the court to consider the public interest. *Dataphase,* 640 F.2d at 114. The court concludes that this factor weighs in favor of the defendant, in that the City has a strong interest in its ability to enforce local ordinances without federal court interference, at least until the merits of this case are decided. In addition, the court recognizes the harm that might come to the neighborhood if a firearms dealer is allowed to operate pending resolution of this matter in contravention of the local zoning ordinance prohibiting gun shops within 1,000 feet of protected uses.

Plaintiff characterizes this case as an important struggle to uphold his Constitutional rights. He has failed, however, to make a colorable showing that any rights would be further impeded during the pendency of this action if the court did not issue an injunction.

In sum, the court notes that the primary purpose of a preliminary injunction is to preserve the status quo until the court reaches the case's merits and can grant full, effective relief if warranted. *National Basketball Ass'n v. Minnesota Professional Basketball, Ltd. Partnership,* 56 F.3d 866, 872 (8th Cir. 1995). In this case, the status quo is that plaintiff does not have a valid firearms license. If the case is resolved in his favor on the merits, plaintiff will have the opportunity to again seek such license and recover any damages he has suffered in the interim. In light of the prerequisites for the granting of a preliminary injunction, however, plaintiff has not shown he is entitled to equitable relief pending this resolution.

### CONCLUSION

The court concludes that plaintiff has failed to satisfy his burden as to the four *Dataphase* factors and, accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for a preliminary injunction is denied.

---

5. The Minnesota Court of Appeals, in its April 1996 ruling, held that plaintiff's application should be treated as if it sought a new license, not a renewal of an existing license.